1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    ALEJANDRO A DELEON,                    Case No.  23-cv-01862-HSG

8                   Petitioner,             ORDER DENYING PETITION FOR
                                            WRIT OF HABEAS CORPUS,
9            v.                             DENYING CERTIFICATE OF
                                            APPEALABILITY
10   BRYAN D PHILLIPS, Acting Warden

11                  Respondent.

12

13          Petitioner, a state prisoner incarcerated at California State Prison – Corcoran, Substance

14   Abuse Treatment Facility, has filed this *pro se* action for a writ of habeas corpus pursuant to 28

15   U.S.C. § 2254, challenging the validity of a conviction obtained against him in San Mateo County

16   Superior Court.  Dkt. No. 1.  Respondent has filed an answer.  Dkt. Nos. 16, 17 ("Answer").

17   Petitioner has not filed a traverse, and the deadline to do so has passed.  The Court has carefully

18   considered the record and, for the reasons set forth below, DENIES the petition for a writ of

19   habeas corpus and DENIES a certificate of appealability.

20                           **I.  PROCEDURAL HISTORY**

21          On August 7, 2019, a Santa Mateo County jury convicted Petitioner of second-degree

22   murder (Cal. Penal Code § 187(a)), and possessing a firearm as a felon (Cal. Penal Code §

23   29800(a)(1)); and found true enhancement allegations that Petitioner personally and intentionally

24   discharged a firearm causing death (Cal. Penal Code § 12022.53(d)) and personally inflicted great

25   bodily injury (Cal. Penal Code § 12002.7).[1]  Answer, Ex. 1 ("CT") 2430-2433; Answer, Ex. 2

26   ("RT") 2660-2662.  On March 10, 2020, the trial court sentenced Petitioner to 42 years to life in

27   _____

28   [1] The jury found Petitioner's codefendant, Louis Mercado, guilty of evading a police officer (Cal.
     Veh. Code § 2800.2(a)).  RT 2662-2663.

United States District Court
Northern District of California

1    state prison.  CT 2909-2911.

2         On June 14, 2022, the California Court of Appeal affirmed the judgment in an unpublished

3    decision.  Answer, Ex. 6.  On June 17, 2022, the California Court of Appeal issued an order

4    denying Petitioner's petition for rehearing and modifying the opinion with no change in judgment.

5    Answer, Ex. 8; *see also People v. Deleon*, C No. A159925, 2022 WL 2127592, *as modified on*

6    *denial of rehearing* (Cal. Ct. App. Jun. 17, 2022).  On August 17, 2022, the California Supreme

7    Court denied review.

8         Petitioner does not report pursuing collateral review in state court.

9         On or about April 17, 2023, Petitioner filed this federal petition for a writ of habeas corpus.

10   Dkt. No. 1.

## II.  BACKGROUND

12        The following factual and procedural background is taken from the June 17, 2022

13   opinion of the California Court of Appeal:[2]

### Background
### A.

15   In September 2016, DeLeon shot and killed Daniel Corona in the parking lot of a PetSmart
     store in San Mateo. The prosecution's theory was that DeLeon formed a deliberate and
16   premeditated intent to kill Corona because he was angry about being disrespected by Corona,
     who was a Sureño gang member. DeLeon admitted shooting Corona but testified that he shot
17   Corona in self-defense.

18   On the evening in question, Louis Mercado was driving a silver Volvo. DeLeon was his
     passenger. They encountered Corona, and his friends (E. L., Jose A., Daisy F., and Diana
19   N.), in a gold Lexus in the parking lot of a liquor store. DeLeon greeted Corona and his
     friends by walking up to the Lexus and saying, "'thought I recognized one of y'all niggas.'"
20   E. L. and Corona exited the Lexus to confront DeLeon. Angry words were exchanged but
     ultimately Corona and E. L. got back in the car and left.

21   Corona had previously parked his truck in the PetSmart parking lot, which was about one
22   block away from the liquor store. He and his friends drove there (in the Lexus), with beer
     Corona had purchased.

23   Shortly after Corona and his friends left the liquor store parking lot, Mercado drove
24   extremely fast to DeLeon's father's apartment, a few blocks away from the PetSmart.
     DeLeon retrieved a handgun and placed it in the waistband of his pants.

25

26   ─────────────

27   [2] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. McDaniel*,
     853 F.3d 1049, 1055 (9th Cir. 2017).  Based on the Court's independent review, the Court finds
     that it can reasonably conclude that the state court's summary of facts is supported by the record
28   and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366
     F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

United States District Court
Northern District of California

Mercado then drove the Volvo and DeLeon to the PetSmart parking lot. DeLeon exited the car, holding a gun. Corona and his friends ran in different directions. Witnesses heard multiple (three to four) shots fired and then saw Corona fall to the pavement.

Jose A. testified that Corona had not been armed. Police discovered no guns, ammunition, or gun paraphernalia when they searched Corona's truck and apartment. However, immediately after the shooting and the departure of the Volvo, Corona's friends gathered around him. One witness observed a female (matching Daisy F.'s description) approach a male (who was crouched behind a car) and give him a bag.

**B.**

San Mateo Police Department officers pursued, and attempted to pull over, the Volvo after DeLeon and Mercado fled the scene. Instead of complying, Mercado drove erratically—at speeds up to approximately 115 miles per hour—weaving through traffic on several freeways, to evade the officers. DeLeon and Mercado were ultimately detained in San Francisco.

During the pursuit, an officer observed someone throw a black object under a bridge, from the passenger side of the Volvo. When police searched the embankment below, they found a loaded Smith & Wesson semiautomatic handgun. The gun's serial number matched that of a gun seen in a photograph found on DeLeon's phone.

Firearms experts opined that the gun found under the bridge was the same one that fired most of the bullets and shell casings found at the scene of the shooting.

The jury heard recordings of numerous phone calls DeLeon made while in jail. The day after the shooting, DeLeon told his girlfriend that she should not expect him to be released because the police had a lot of evidence against him "for murder." When his girlfriend mentioned having known Corona, DeLeon protested that "[Corona] was runnin' his fuckin' mouth" and "tried to push up on me."

**C.**

DeLeon testified, in his own defense, that he shot Corona, after Corona threatened him, out of panic and fear that Corona was going to kill him.

DeLeon testified that Corona and E.L. challenged DeLeon to fight after he innocently mistook their identities at the liquor store. DeLeon was scared because Corona came very close to him and said, "'Next time you call my homie "nigga," we gonna have a problem.'" DeLeon also testified that he heard Corona say, "'I'll kill that motherfucker.'"

DeLeon abruptly left the liquor store, without making his intended purchase, and Mercado drove him to his father's apartment, in a hurry, because DeLeon had prearranged marijuana sales, including one in the PetSmart parking lot, and did not want to keep his customers waiting. DeLeon retrieved his gun and some marijuana.

Mercado drove DeLeon to the PetSmart parking lot, where DeLeon looked for an expected customer. Instead DeLeon saw Corona standing in front of his truck. Corona pulled up his shirt to reveal a chrome revolver, tucked into his waistband. Corona said, "'What's up now, motherfucker?'"

When Corona pulled his gun out of his waistband and began walking toward DeLeon, DeLeon pulled out his own gun and fired it multiple times at Corona. DeLeon said he did so because he was scared and that he was not thinking of killing Corona or of anything else. DeLeon stopped shooting when Corona, after turning and running away, fell to the ground. DeLeon and Mercado did not stop the Volvo and discarded the gun, after realizing police

1    officers were pursuing them, because DeLeon did not want to "get in trouble" for shooting Corona.

2    On cross-examination, DeLeon acknowledged that he had never mentioned in any of his
3    post-arrest communications (with his girlfriend, his father, or police) that Corona had been armed.

4                                                   **D.**

5    The jury acquitted DeLeon of first degree murder but convicted him of second degree murder and possessing a firearm as a felon. [FN 2] The jury found the firearm enhancement
6    allegation true but acquitted DeLeon of another count—shooting from a motor vehicle (§ 26100, subd. (c)). The trial court sentenced DeLeon to an aggregate prison term of 42 years
7    to life.

8              FN 2: Before DeLeon testified, the parties stipulated that he suffered a felony
             conviction, in 2014, for possession of marijuana for sale (Health & Saf. Code, §
9            11359).

10   *DeLeon*, 2022 WL 2127592, at *1–*2.

11                                      **III. DISCUSSION**

12   **A.      Standard of Review**

13          A petition for a writ of habeas corpus is governed by the AEDPA.  This Court may

14   entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the

15   judgment of a State court only on the ground that he is in custody in violation of the Constitution

16   or laws or treaties of the United States."  28 U.S.C. § 2254(a).

17          A district court may not grant a petition challenging a state conviction or sentence on the

18   basis of a claim that was reviewed on the merits in state court unless the state court's adjudication

19   of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

20   application of, clearly established Federal law, as determined by the Supreme Court of the United

21   States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

22   light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Greene v.*

23   *Fisher*, 565 U.S. 34, 38 (2011).

24          Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's

25   jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the

26   United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions

27   as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

28   A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a

*United States District Court*
*Northern District of California*

4

rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Petitioner first raised the claim presented in the instant federal habeas petition in his direct appeal. Answer, Ex. 3 (Dkt. No. 17-34). The California Court of Appeal denied this claim in a reasoned opinion. *People v. Deleon*, 2022 WL 2127592. Petitioner also raised this claim in his petition for review to the California Supreme Court, which was summarily denied. Answer, Exs. 9, 10 (Dkt. Nos. 17-40, 17-41). Accordingly, in addressing the instant federal habeas petition, the Court reviews the California Court of Appeal's opinion.

**B.      Discussion**

The petition alleges one claim for federal habeas relief. The petition alleges that Petitioner's right to due process was denied when the state court failed to exercise its discretion pursuant to Cal. Penal Code § 12022.53(h) to dismiss or strike his conviction for firearm enhancement. Petitioner argues that his sentence for the firearm enhancement, 25 years to life,

5

1    was excessive, noting that his sentence for second-degree murder was shorter, 15 years to life. *See*

2    *generally* Dkt. No. 1.

3          The California Court of Appeal denied the claim as follows:

4                                              **C.**

5          Finally, DeLeon challenges the trial court's decision to decline to strike the firearm use
     enhancement in furtherance of justice (§ 12022.53, subd. (h)). He shows no abuse of

6    discretion. (See *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*) [standard of
     review].)

7                                              **1.**

8          Before 2018, trial courts were required to impose additional punishment for firearm
     enhancements found true. (§ 12022.53, subds. (d), (h), as enacted by Stats. 2010, ch. 711, §

9    5.) But trial courts now (and at the time DeLeon was sentenced) have discretion to strike or
     dismiss them "in the interest of justice." (§ 12022.53, subd. (h), as amended by Stats. 2017,

10   ch. 682, § 2, eff. Jan. 1, 2018; *People v. Flores* (2021) 63 Cal.App.5th 368, 376.)

11         While DeLeon's appeal was pending, our Supreme Court resolved a split of authority about
     whether a court may also reduce the punishment imposed for the particular firearm

12   enhancement at issue here—which provides for a term of 25 years to life under section
     12022.53, subdivision (d)—by imposing a lesser uncharged firearm enhancement under

13   subdivisions (b) or (c). (*People v. Tirado* (2022) 12 Cal.5th 688, 696-697, 700 (*Tirado*).)
     Our Supreme Court concluded: "When an accusatory pleading alleges and the jury finds true

14   the facts supporting a section 12022.53(d) enhancement, and the court determines that the
     section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h),

15   the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b)
     or (c)." (*Tirado, supra,* at p. 700.) [FN 3]

16         FN 3: A conflict existed at the time of DeLeon's sentencing. (*Tirado, supra*, 12
           Cal.5th at pp. 696-697 [discussing conflict between *People v. Morrison* (2019) 34

17         Cal.App.5th 217, 222-223 [court has discretion to impose uncharged lesser
           enhancement] and *People v. Tirado* (2019) 38 Cal.App.5th 637, 643 [uncharged

18         lesser enhancement cannot be imposed], revd. by *Tirado, supra*, 12 Cal.5th at p.
           700].) In his opening brief on appeal, DeLeon appears to concede that the trial court

19         was aware of its discretion to impose an uncharged lesser enhancement under section
           12022.53, subdivisions (b) or (c). It is not until his reply brief that he asks us to

20         remand the matter for the trial court to consider anew whether to impose such a lesser
           enhancement. Accordingly, he forfeited the argument. (See *People v. Newton* (2007)

21         155 Cal.App.4th 1000, 1005.) In any event, DeLeon fails to demonstrate remand
           would be appropriate. (*See People v. Morrison, supra*, at p. 225; *People v. Leon*

22         (2016) 243 Cal.App.4th 1003, 1026.) Defense counsel asked the trial court, at
           sentencing, to exercise its discretion to impose a lesser enhancement, citing

23         *Morrison*. And the trial court affirmatively indicated it understood its discretion.

24                                             **2.**

25         The jury found true an enhancement allegation that DeLeon personally and intentionally
     discharged a firearm causing death (§ 12022.53, subd. (d)). However, at sentencing,

26   DeLeon's counsel asked the trial court to exercise its discretion to strike the firearm
     enhancement, in furtherance of justice. Despite not having been specifically charged with

27   such lesser enhancements, DeLeon's counsel asked the trial court, in the alternative, to
     impose a lesser enhancement under subdivisions (b) or (c) of the statute. In support of his

28   requests, DeLeon pointed out his age (22 years old) at the time the crimes were committed,
     his history of childhood trauma, and the fact that he had not previously been convicted of a

United States District Court
Northern District of California

violent crime.

The trial court denied DeLeon's request, stating: "As to the enhancement under 12022.53(d), I think the reason we have that provision is the legislative desire to get guns off the street and this is one way to do it." Accordingly, in addition to imposing a term of 15 years to life for second degree murder, the court imposed a consecutive term of 25 years to life for the aggravated firearm enhancement (§ 12022.53, subd. (d)).

**3.**

DeLeon maintains the trial court abused its discretion because it relied on an impermissible factor. He is wrong.

In deciding whether to strike a firearm enhancement in the interest of justice, the trial court must consider the same factors it is required to consider when sentencing in the first instance. (*Pearson, supra,* 38 Cal.App.5th at pp. 116-117.) Those factors include general sentencing objectives (including protecting society and deterrence of criminal conduct), whether the victim was particularly vulnerable, whether the defendant was armed or used a weapon in committing the crime, and whether the crime involved great violence, threat of great bodily harm, or a high degree of cruelty, viciousness, or callousness. (*Id.* at p. 117; Cal. Rules of Court, rules 4.410 & 4.421.)

DeLeon's argument appears to be grounded only in the fact that the trial court did not explicitly mention any of the above factors on the record when it made its ruling. But we presume the trial court considered the correct factors *unless* the record *affirmatively* shows otherwise. (*Pearson, supra,* 38 Cal.App.5th at p. 117.)

Here, nothing in the record indicates the trial court failed to follow the law. It heard relevant argument from the prosecutor and defense counsel. And, in explaining its decision, the trial court merely indicated that imposition of the 25 years to life enhancement furthered the deterrence and protective purposes of the statute. The trial court was not wrong about the legislative intent. (See Stats. 1997, ch. 503, § 1 ["Legislature finds and declares that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime"].)

DeLeon fails to show that the trial court abused its discretion. (See *Tirado, supra,* 12 Cal.5th at p. 701.)

*DeLeon*, 2022 WL 2127592, at *7–*8 (emphasis in original).

Respondent correctly identifies this claim as alleging state sentencing error and therefore

failing to state a claim for error of federal law.

Petitioner's claim solely concerns the application of state law. Petitioner argues that the

state court erred in denying his request, made pursuant to Cal. Penal Code § 12022.53(h), to

dismiss his firearm enhancement allegation, imposed pursuant to Cal. Penal Code § 12022.53(d).

This argument asserts only an error of state law, for which federal habeas relief is unavailable.

Federal habeas relief is only available for violations of the Constitution, laws, or treaties of the

United States and "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) (internal quotation marks and citations omitted). Whether a state court properly applied

1    state sentencing law or abused its discretion in making sentencing choices is a question of state

2    law and is not subject to federal habeas review.  *See Souch v. Schiavo*, 289 F.3d 616, 623 (9th Cir.

3    2002) (claim that Arizona state court violated state sentencing law failed to state federal habeas

4    claims).  Federal courts must defer to state courts' interpretations of state sentencing laws.  *See*

5    *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993).  The trial court's alleged misapplication of

6    Cal. Penal Code § 12022.53(h) fails to state a claim for federal habeas relief.  *Burdick v. Madden*,

7    No. EDCV 21-1062-MEMF (LAL), 2022 WL 20359423, at *10 n.48 (C.D. Cal. Dec. 13, 2022),

8    *report and recommendation adopted sub nom. Burdick v. Pollard*, No. EDCV 21-1062-MEMF

9    (LAL), 2023 WL 4564406 (C.D. Cal. July 17, 2023) (claim that state trial court erred by denying

10    request to strike the firearm enhancement under Cal. Penal Code  § 12022.53(d) raises an issue of

11    sentencing law only and does not state cognizable federal habeas claim, collecting cases).

12        "[A] state court's misapplication of its own sentencing laws" may justify federal habeas

13    relief upon "a showing of fundamental unfairness."  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir.

14    1994).  However, that is not the case here.  Petitioner argues that his sentence is "unfair" because

15    he is receiving a longer sentence for his firearm use enhancement than he is receiving for second-

16    degree murder.  There is no clearly established federal law requiring that the punishment for an

17    enhancement be less than the punishment for a violent crime.  Rather, the Eighth Amendment only

18    forbids "extreme sentences that are grossly disproportionate to the crime."  *Graham v. Florida*,

19    560 U.S. 48, at 59-60 (2010).  "Circumstances satisfying the gross disproportionality principles

20    are rare and extreme, and constitutional violations on that ground are 'only for the extraordinary

21    case.'"  *Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012).  A sentence of twenty-five years to

22    life for a firearm enhancement is not grossly disproportionate to the crime.  *See Plascencia v.*

23    *Alameida*, 467 F.3d 1190, 1197 (9th Cir. 2006) (petitioner sentenced to twenty-five-years-to-life

24    for first degree murder and consecutive twenty-five-years-to-life for firearm use enhancement;

25    court rejected claim that sentence for enhancement constituted cruel and unusual punishment,

26    finding that sentence was neither extreme nor grossly disproportionate to crime).

27        Petitioner's conclusory assertion that his sentence violates due process does not state a

28    violation of federal law.  Petitioner may not "transform a state-law issue into a federal one merely

United States District Court
Northern District of California

1  by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

2  A violation of a state law might implicate federal due process concerns, but only if the state statute

3  creates a protected "liberty interest." *See Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995

4  ("*Bonin I*").  A state law creates a "liberty interest" protected by the Due Process Clause if the

5  law: (1) contains "substantive predicates" governing official decision making; (2) contains

6  "explicitly mandatory language" specifying the outcome that must be reached if the substantive

7  predicates are met; and (3) protects "some substantive right protected by the Constitution." *Id.* at

8  842; *see, e.g., Bonin v. Calderon*, 77 F.3d 1155, 1161-62 (9th Cir. 1996) ( "*Bonin II*") (even

9  assuming violation of state law in setting execution date, no federal habeas claim because there

10 was no deprivation of federal substantive right); *Bonin I*, 59 F.3d at 842 (California statute which

11 gives defendant in capital case right to have two defense attorneys argue on his behalf does not

12 create protected liberty interest cognizable in habeas because it contains neither "substantive

13 predicates" nor "explicitly mandatory language," and there is no federal constitutional right to

14 have two attorneys make closing arguments).   Petitioner has not shown that Cal. Penal Code §

15 12022.53(d) created a substantive right protected by the federal constitution.

16        Habeas relief is therefore denied on this claim.

17                          **IV.  Certificate of Appealability**

18        The federal rules governing habeas cases brought by state prisoners require a district court

19 that issues an order denying a habeas petition to either grant or deny therein a certificate of

20 appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

21        A judge shall grant a certificate of appealability "only if the applicant has made a

22 substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

23 certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3).  "Where a district

24 court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

25 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

26 court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

27 473, 484 (2000).

28        Here, Petitioner has not made such a showing, and, accordingly, a certificate of

appealability will be denied.

## V. CONCLUSION

For the reasons stated above, the Court DENIES the petition for a writ of habeas corpus, and DENIES a certificate of appealability.  The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated:    2/16/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge